**BOARDMAN SUPPLY COMPANY, Appellant, v. BOWERS, Tax Commr., Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3832.   Decided March 28, 1956.

W. Leo Keating, Warren, Robert B. Weimer, Youngstown, for appellant.

C. William O'Neill, Atty. Genl., Larry H. Snyder, Asst. Atty. Genl., Columbus, for appellee.

**OPINION**

By PHILLIPS, PJ.

The Boardman Supply Company, a corporation, called the Supply Company, appealed under authority of §5717.04 R. C., to this court on questions of law from the final decision of the Board of Tax Appeals of the Department of Taxation of Ohio, called the Board, determining adversely to the Supply Company its appeal from the final determination, findings and order made by the Tax Commissioner of Ohio assessing "a sales and use tax against" the Supply Company in the total amount of $2548.91 including penalties.

The Supply Company sells concrete mixed to the users' specifications, dry ready for the user to add water, or ready for pouring, in which event it is mixed in transit.

The Supply Company stores temporarily cement and other ingredients of concrete in ground level storage bins which are a part of its "batching plant," which was purchased and installed as a unit in its yard, from which, as needed, such materials are elevated by inclined conveyors and deposited in separate storage bins.

From these bins the materials descend by gravity into weighing batchers. After being weighed such materials are deposited by chute into collecting hoppers, from which they are discharged by gravity into concrete mixers mounted on motor truck chassis, called transit mixers, or in other trucks. Water secured from deep wells situated on the Supply Company's property is pumped into a water weighing batcher in exact quantity and is poured into a transit concrete mixer where it is mixed in transit ready to pour on a job site or deposited in a truck loose or in sacks dry ready for the user to add water when ready to pour when not mixed in transit.

All the equipment assessed is situated in the Supply Company's batching plant.

By assignments of error the Supply Company contends:—

"1. The evidence in the case establishes, without contradiction, that the equipment being subjected to the tax was used directly in the processing of ready-mix concrete in that the blending and proportioning process is a most important, integral, and indispensible part of the process.

"2. The Board of Tax Appeals erred in finding that the 'process' did not begin until the material had left the equipment upon which the tax is sought to be assessed. The Board in its decision emphasizes the mixing process but completely ignored the batching process which controls the proportioning of the materials and is sine qua non to the production of ready mix concrete.

"3. The Board of Tax Appeals erred in making its determination by considering the equipment herein as having some mixing function whereas, its sole function is in properly proportioning the material to be mixed.

"4. The Board of Tax Appeals erred in making its determination when it considered the various bins to be storage bins, when in fact, they were merely funnels for the handling of materials.

"5. The Board of Tax Appeals erred in not finding that the items in

the assessment constitute personal property used and consumed directly in the production, by processing, of tangible personal property for sale and are, under the provisions of §§5739.01 and 5741.01 R. C., exempt from sales and use taxes; that said items are machinery, equipment and supplies used and consumed in and as a part of the 'batch plant operations in the production of ready-mix concrete to specifications of the purchasing trade, before the same is available and ready for market and sale; that said operations consist of the receiving in the batch plant of cement, aggregate (sand and crushed stone) and water and the blending thereof into the mix specified by purchasers; and that the operation is a continuing process from the time the ingredients are received in the 'batch' plant to delivery of the ready mix concrete by truck to the jobs of the customers.

"6. The Board of Tax Appeals erred in finding that 'processing starts at the "Batchers" the point where various ingredients entering into the concrete mix or dry batch are brought together.'

"7. The Board of Tax Appeals erred in finding that 'the various items involved are not incorporated nor did they become a part of the assessee's plant as within the processing area as herein held and therefore were not used directly in processing.'

"8. The final decision of the Board of Tax Appeals is contrary to and is not sustained by the evidence in the case.

"9. The final decision of the Board of Tax Appeals was and is unreasonable.

"10. The final decision of the Board of Tax Appeals was and is unlawful.

"11. Other errors at law."

The Supply Company's contentions are set forth at sufficient length in its assignments of error to understand its position that "under the terms of §5739.01 (E) (2) R. C., that the machinery herein concerned is exempt from sales and use tax."

The Board contends that "the question presented by this appeal is whether the decision of the Board of Tax Appeals, which affirmed the final order of the Tax Commissioner, assessing sales tax on the purchase of the tangible personal property in question was unreasonable and unlawful," which it answers in the affirmative.

The Board contends further that the Supply Company "is engaged in the production of ready-mix concrete," and that the term "directly" means proximately or as having an immediate application; that by the force of §5739.02 R. C., "it is presumed that all sales made in this state are subject to the tax" until the contrary is established, and that when it claims an exemption or exception from the sale or use tax the Supply Company must establish affirmatively its right thereto. **Merchants Cold Storage Co. v. Glander, 150 Oh St 524,** and **National Tube Co. v. Glander, 157 Oh St 407,** are cited as authority for that contention.

The sales and use tax plus penalties of $2548.91 were levied upon the Supply Company's batching plant, where the Board contends the processing of concrete occurs, which processing is defined by the United States Supreme Court in Cochrane v. Deener, 94 U. S. 780, as:—

"A process is a mode of treatment of certain materials to produce a given result. It is an act or a series of acts, performed upon the subject matter, to be transformed and reduced to a different state or thing."

In the case of **France Co. v. Evatt, Tax Commissioner, 143 Oh St 455,** upon which the Supply Company relies heavily, the Supreme Court said:—

"Sales of tangible personal property used and consumed in operations consisting of transporting crushed-stone products from a stone crushing and screening plant to yards adjacent thereto, and of draining, cleaning, blending and reassembling such products to comply with the required specifications of the purchasing trade before they are available and ready for market and sale, are sales of personal property used and consumed directly in the production by processing of tangible personal property for sale and are, under the provisions of §§5546-1 and 5546-25 GC, exempt from state sales and use taxes."

From the evidence it is clear to this court that all of the property sought to be taxed under the decision of the Board is an integral part of a plant designed, purchased as a unit, installed and operated by the Supply Company as a batching plant for the manufacture of concrete according to the purchaser's specifications for a particular use. Without each and every one of the items of personal property taxed there could be no finished product, and therefore each and every part of the property attached was used in the manufacture of the product of concrete in its final form and is subject to the exemption set forth in §5739.01 (E) (2) R. C. See **France Co. v. Evatt, Tax Commissioner, 143 Oh St 455; Tri-State Asphalt Corp. v. Glander, Tax Commissioner, 152 Oh St 497;** Cochrane v. Deener, 94 U. S. 780; and **Terteling Bros., Inc. v. Glander, Tax Commissioner, 151 Oh St 236.**

In the case of Terteling Bros., Inc. v. Glander, supra, the court said that coal in place in the mine and equipment used for severing it from the coal seam and transporting it to the crushing plant, and the crushing plant as a whole, were all used for the purpose of manufacturing the finished product, which was crushed coal, and therefore were not taxable.

The facts in the case of Terteling Bros. v. Glander, supra, are so similar to those in the case under consideration as to make it impossible to assign any reason for differing with the court's decision in that case. All of the property taxed in the case we consider was situated upon property designed for use as a single unit for the purpose of manufacturing concrete, and all the transportation required was directly connected with the manufacture of the finished product and not remotely connected therewith.

The decision of the Board of Tax Appeals is unreasonable and unlawful and must be reversed and this cause is remanded to that Board with direction to issue its certificate of abatement to Boardman Supply Company in the sum of $2548.91.

NICHOLS and GRIFFITH, JJ, concur in judgment.

No. 3832. Decided April 5, 1956.

## OPINION

By NICHOLS, J.

The Tax Commissioner of Ohio assessed a sales and use tax upon property of the Boardman Supply Company specifically described as personal property **purchased** by the Boardman Supply Company.

The action of the Commissioner was affirmed upon appeal to the Board of Tax Appeals, and the Boardman Supply Company appeals to this court from the decision of the Board of Tax Appeals.

From the evidence it is clear to this court that all of the property sought to be taxed under the decision of the Board of Tax Appeals is an integral part of a plant designed, purchased, and operated for the manufacture of concrete according to specifications required by the purchaser thereof for particular uses, the product being assembled in what is described as a batching plant. Without each and every one of the items of personal property taxed there could be no finished product, and therefore each and every part of the property taxed was used in the manufacture of the product of concrete in its final form and is subject to the exemption set forth in §5739.1 (E) (2) R. C. For authority we cite the following cases: **France v. Evatt, 143 Oh St 455; Tri-State Asphalt v. Glander, 152 Oh St 497;** Cochrane v. Deener, 94 U. S. 780; and **Terteling Bros. v. Glander, 151 Oh St 236.**

In the latter case the court said that coal in place in the mine and the equipment for severing it from the coal seam, the equipment used for transporting the same to the crushing plant, and the crushing plant as a whole, was used for the purpose of manufacturing the finished product, which was crushed coal, and was therefore not taxable.

There is such similarity between the facts in the latter cited case and the one here as to make it impossible to distinguish any reason for differing from the court's decision in that case. Indeed, here every item of the property taxed was located upon property designed for use as a single unit, to-wit, the manufacture of concrete, and all the transportation required was that directly connected with the manufacture of the finished product and not remotely connected therewith.

The decision of the Board of Tax Appeals is unreasonable and unlawful and must be reversed and this cause is remanded to that Board with direction to issue its certificate of abatement to Boardman Supply Company in the sum of $2548.91.

GRIFFITH, J, concurs.
PHILLIPS, PJ, concurs in judgment.