**COLLINWOOD SHALE BRICK AND SUPPLY COMPANY, Appellant, v. BOWERS, Tax Comr., Appellee.**

Board of Tax Appeals, Department of Taxation, State of Ohio.

No. 33701. Decided July 31, 1957.

458

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, by C. Grahame, Cleveland, for appellant.

William Saxbe, Atty. Genl., by Miles D. Evans, Asst. Atty. Genl., for appellee.

## OPINION

This is an appeal from a sales and use tax assessment made by the tax commissioner on December 6, 1956. The sales end of the assessment amounts to $1,477.19, the use tax to $127.11, together with a penalty contingent upon the date of payment specified in the order. The audit period covered extends from October 31, 1951, to July 9, 1954.

The cause now comes on for further and final consideration upon appellant's notice of appeal and the order complained of, the Commissioner's transcript, the record of a hearing had before this Board on April 12, 1957, and briefs of counsel.

The errors complained of by the assessee with respect to said findings are as follows:

1. That the tax commissioner erred in finding that none of the items referred to and described in said exhibit A were used or consumed by the taxpayer directly in the production of the taxpayer's products, within the meaning of the applicable law.

2. That the tax commissioner erred in finding and concluding that the purchase and use of such items by the taxpayer, as aforesaid, were not exempt from the imposition of the Ohio Sales and/or Use Tax.

3. That the tax commissioner erred in holding that said assessment was properly issued in the amounts set forth in said findings.

4. That the commissioner erred in not finding that said items were purchased by the taxpayer for use and/or were used directly in the production and manufacture of brick and ready mixed concrete for sale, and therefore were exempt under §5739.01 R. C.

5. That the tax commissioner erred in not finding that said Sales and Use Tax assessment is erroneous, unreasonable, unlawful and discriminatory, and therefore was improperly issued.

Appellant has three plants within the City of Cleveland wherein it manufactures ready mixed cement, in one of which it mines shale, which it pulverizes and then manufactures into shale brick. In its petition for reassessment before the commissioner it enumerates the assessed

items of which it complains. We shall separately consider these items in the order therein found, and shall set forth the part that each item plays in the production of appellant's products.

(1) Buda Lift Truck. Pages 28 and 29 of the Record.

Q. "But in the main use of this Buda lift truck, it is used to transport finished products, and there is no change in them; is that right?"

A. "Yes."

(2) Ford Lift Tractor front end loader. From Pages 24 to 27 of the Record we glean the following:

This implement is used exclusively in the production of brick. Sixty to sixty-five per cent of its use is in sanding brick, so that they will not fuse or stick together in the kilns, and handling heavy equipment in the brick making process. Less than a third of its time it is used in handling finished bricks from the production line to loading dock or to the storage yard.

(3) Parts for Fairfield Conveyor. Page 24 of the Record.

This conveyor is used exclusively in removing coal from railroad cars to the kiln, where it is used to fire the kilns.

(4) Browning Bucket Crane. Pages 29 to 32 of the Record.

This implement lifts raw materials, such as sand, stone, slag and cement into separate compartments at the top of the batching plant. It effects no change in substance. Appellant's president further testifies that:

A. (Page 30) "There is no mixing in the original compartments into which we discharge sand, stone, and these other component parts; but the mixing starts as soon as we weigh them into the first collecting hopper."

We take it that this collecting hopper contains a dry mix. Water may thereafter be added to the mix in a lower hopper or in the distributing trucks in accordance with the customer's order. This crane is mounted on a flat car which moves upon a track of considerable length alongside the batching plant.

(5) Steam Generator. Pages 32, 38 of the Record.

This item consists of a heavy boiler with attachments, which stands close to and alongside the batching plant. It is used to generate steam during the winter period which is carried to the top separate compartments and mixing hopper to avoid freezing of the raw materials therein and facilitate mixing in the mixing hopper. It effects no change in materials other than plasticity.

The assessment of these five items constitutes the sales tax assessments. Items (6) and (7) constitute the use tax assessment.

(6) Cement Storage Bin or Silo. Record Pages 33 and 34.

This item is about 10 feet in diameter and 30 feet in height, set alongside the batching plant and is used for the storage of bulk cement.

(7) Screw Feeder for Cement Bin.

This instrument removes cement from the storage bin and elevates it to the bin for cement at the top of the batching plant, from whence it flows into the first mixing bin, where it first meets the other components, such as sand and stone.

Appellant in presenting its complaint relies upon the following Ohio authorities:

France Co. v. Evatt, 143 Oh St 455, 28 O. O. 381; Terteling Bros., Inc. v. Glander, 151 Oh St 236, 39 O. O. 60; Mead Corporation v. Glander, 153 Oh St 539, 42 O. O. 24; and The Boardman Supply Co. v. Bowers, decided by the 7th District Court of Appeals in Mahoning County, on March 28, 1956, 76 Abs 209 and 213.

Particular stress is laid on the Boardman case in support of its argument.

The court in American Compressed Steel Corp. v. Peck, 160 Oh St 207 (208), 52 O. O. 24, makes this statement:

"What constitutes a use or consumption of equipment directly in the production of tangible personal property for sale by processing has been fully discussed and determined in the case of Tri-State Asphalt Corp. v. Glander, Tax Commr., 152 Oh St 497, 41 O. O. 40, 90 N. E. (2d), 366, and Mead Corp. v. Glander Tax Commr., 153 Oh St 539, 42 O. O. 24, 93 N. E. (2d), 19."

We therefore first turn to the Tri-State case, supra. Its syllabus reads:

"Boom and bucket cranes the sole function of which is the conveying of ingredients to the place of processing, and which have no part in the actual processing itself, are not used or consumed directly in the production of tangible personal property for sale by processing and, under §5546-1 GC (now §5739.01 R. C.), their sales are not excepted from taxation."

On Page 501 of the opinion it is further stated that:

"When the General Assembly excepted from taxation the sales of those things which were to be used or consumed directly in the production of tangible personal property for sale by processing, it had in mind only such articles as had a direct part in the processing. Sales of instrumentalities of transportation and other articles or things which are necessary to carry on the business of processing, but which themselves have no part directly in the production, were not excepted."

The same court has gone on further to pinpoint the law in such cases, and says in Jackson Iron & Steel Co. v. Glander, 154 Oh St 369 (373), 43 O. O. 255, that:

"To come within the exceptions from taxation imposed by the Sales and Use Tax Acts, the sale must be of (1) items necessary and not merely facilitative to the actual business of producing tangible personal property which is to be sold, (2) items used for transporting articles where such transportation is a part of the processing of such articles and (3) items used or consumed during the actual manufacturing or processing."

Since appellant relies in part upon the claim that its batching plants are integrated operations, and that its mining of shale and the making of shale brick are of the same character, it is well at this point to further quote from the Jackson Iron Case, supra. Page 373:

"In the instant case, it can not fairly be said that the mining of coal (shale) is a direct and integral part of the production of pig iron (bricks). Here, there are two distinct activities, namely, mining and smelting, (brick making) and, although they are related in that mined coal (shale)

is utilized in the production of pig iron (bricks), the two are still separate and distinct operations." (interjections ours.)

Examination of the Mead Corp., case, supra, discloses that it did little more, on one phase of the case, but apply the law as already announced in such cases. It did, however, expand upon the law of the **Fyr-Fyter** and **Hanna Coal cases, 150 Oh St 118, 37 O. O. 432,** wherein the word "directly" is defined, by embracing therein the "primary" test for exemptibility. On Page 543 (Mead Case) the following is found:

"Where equipment is employed principally in a way which excepts its purchase from the sales and use tax, its incidental use otherwise will not destroy such excepted status."

"The general rule is that 'it is the primary, as distinguished from an incidental, use of the property that determines the question whether it is exempt from taxation.'"

It is doubtful if the conclusions of fact reached in the Mead case, supra, in view of the court's pronouncement in **Union Carbide & Carbon Corp. v. Bowers, 166 Oh St 419, 2 O. O. (2d) 403,** decided June 12, 1957, would again be so found.

Appellant has urged upon us the case of **Boardman Supply Co. v. Bowers,** decided by the Seventh District Court of Appeals on March 28, 1956, **76 Abs 209** and **213.** This case appears to be decided upon the theory that all assessed property is an integral part of an operating plant and hence is exempt from sales and use taxation. Appellant says that a motion to certify has been overruled therein, and that such action reveals a strong presumption of the correctness of that court's decision. As we understand it, the Supreme Court has stated that no presumption is to be drawn from any such action. What the court held in the Boardman case is to date the law of the case within the Seventh District. The law of Ohio in such cases is found in the Supreme Court cases herein referred to and which we propose to follow. Never, to our knowledge, has a majority of the court, in any reported case, subscribed to the "integrated" theory under which the Boardman case is decided. We can not refrain from the comment, that the statutory amendment of two years ago does not make for unanimity or equalization of tax law in Ohio, as evidenced by the decision of the Boardman case. Those ends may not be attained when eleven courts have final jurisdiction in such cases.

Applying the law, as we conceive it to be, to the facts of this case, we reach the conclusion that production of ready mixed concrete begins when the aggregates are weighed and dropped into the mixing bin from the top storage bins. In other words, in the first mixing bin.

We find the second item, the "Ford Lift Tractor front end loader" to be directly and primarily used during the manufacturing process of making bricks. It is therefore entitled to be exempt from sales and use taxation.

We find all other items in question are subject to sales and use taxation. All are used before and after production begins and ends, and are therefore not used directly and primarily in production.

It follows that the commissioner's order must be and is modified in accordance herewith, and the order affirmed as modified.