Bell, J.
A batching plant, as the term is used in the ready-mix concrete business, is a semiportable steel structure, mounted on a concrete base embedded in the ground, and containing separate compartments or bins where the various ingredients used in the processing of concrete — aggregates, cement and water — are separately stored, weighed and blended into ready-mix concrete.
The upper part of a batching plant contains the bins where *366 the various aggregates and cement are kept in separate compartments. At the base of these bins, an automatic mechanism weighs and allows the right amounts of the dry ingredients to drop, by gravity, into a so-called common weigh hopper. From the common weigh hopper the commingled dry ingredients drop into a compartment, known to the trade as a batcher or mixer, where the proper amount of water is added and all the ingredients are thoroughly mixed. The wet ready-mix, ready for use, is then dropped into trucks below. Such a plant is known as a “wet plant.”
A “dry plant” differs from a “wet plant” only in that the former has no batcher or mixer, the dry ingredients being dropped from the common weigh hopper into a mixer truck, simultaneously with water, and the mixing process occurs while the truck is en route to its destination.
Generally speaking, the procedure involves the unloading of sand, gravel, cement and certain other materials from railroad cars or other means of conveyance at the plant site and the placing of such materials either into storage bins or pits at or below ground level or directly into the bins at the top of the batching plant. Belt and screw conveyors (items 3 and 12) are used to convey the various materials from these storage bins to storage compartments or bins at or near the top of the plant, and a bucket conveyor (item 10) is used to convey such materials from railroad cars to either the ground or plant storage bins.
All the property involved in these cases is used prior to the commingling of the ingredients in the common weigh hopper. The single question for determination here is whether the property is used or consumed “directly in the production of tangible personal property for sale by manufacturing, processing.” Subdivision (E) (2) of Section 5739.01, and subdivision (C) (2) of Section 5741.01, Revised Code.
The taxpayers in these cases make a strong contention that the property involved is part of an “integrated plant” and, therefore, that each item is indispensable to the processing of concrete. They gain a measure of support for their position from the decision of the Court of Appeals of the Seventh Appellate District in Boardman Supply Co. v. Bowers, Tax *367 Commr., 76 Ohio Law Abs., 209, that the sale or use of property of an integrated plant is not subject to taxation.
However, as pointed out by the Board of Tax Appeals in its entry in cause No. 35346, this court has never adopted the “integrated plant” theory, and our overruling of the motion to certify in the Boardman case should not be so interpreted. To do so would in many instances except from taxation the sales of practically all instrumentalities used by manufacturers or processors, since it could always be said that each instrumentality plays some part in the manufacturing or processing.
In attempting to interpret the ambiguous word, “directly,” as used by the General Assembly, this court has adopted a physical test: when does the manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period?
Although there is much to be said for interpreting the term, “use or consume * * * directly,” as contemplating only “those things which are entirely used up or consumed in the processing and which can not again be used” (see Tri-State Asphalt Corp. v. Glander, Tax Commr., 152 Ohio St., 497, 502, 90 N. E. [2d], 366, and the dissenting opinion of Judge Taft in Terteling Bros. v. Glander, Tax Commr., 151 Ohio St., 236, 85 N. E. [2d], 379), apparent confusion would only be compounded by adopting such an interpretation at this late date.
We are of the opinion that our rejection of the “integrated plant” theory does not contemplate the breaking up of a single manufacturing or processing machine into its component parts and the segregation of such parts into classes that are considered to be used directly in the operation of that machine and those that are not. Factually, the Tax Commissioner and the Board of Tax Appeals treated the various items of property involved herein as separate instrumentalities. With that treatment we are in accord, and we are satisfied, generally, that the decisions of the board in that respect are neither unreasonable nor unlawful. Although the lines drawn by this court may seem to be artificial or arbitrary, they have been drawn and should serve some useful purpose as a guide for the determination of questions which are mainly factual. Tri-State Asphalt Corp. v. Glander, Tax Commr., supra; Powhatan Mining Co. v. *368 Peck, Tax Commr., 160 Ohio St., 389, 116 N. E. (2d), 426; General Motors Corp. v. Bowers, Tax Commr., 164 Ohio St., 574, 132 N. E. (2d), 213; Roches Bros., Inc., v. Bowers, Tax Commr., 166 Ohio St., 396, 143 N. E. (2d), 123.
We are of the opinion that all the items here involved, with the exception of the steam generators (items 5 and 9), are not used directly in the processing of ready-mix concrete, and that such generators, at least during the winter season, are used directly in such processing, and their sale or use is, therefore, excepted from the tax. But see General Cigar Co., Inc., v. Peck, Tax Commr., 159 Ohio St., 152, 111 N. E. (2d), 265.
To that extent, the decisions of the Board of Tax Appeals in causes Nos. 35340 and 35346 are modified.
The Board of Tax Appeals found the sale or use of the 200-ton 4-compartment bin (item 2) to be taxable. Yet it found the sale or use of the concrete and wire used in the foundation for such bin to be excepted from taxation. The unreasonableness of that part of the decision is obvious, and it is, therefore, reversed in that respect in case No. 35335.

Decision modified and, as modified, affirmed and reversed in part in cases Nos. 35335 and 35340.

Decision modified and, as modified, affirmed in case No. 35346.

Weygandt, C. J., Zimmerman, Stewart, Tart and Matthias, JJ., concur.
Herbert, J. I concur in the syllabus and in the judgment except with respect to the items listed in the opinion as items 1, 2 and 6.
Applying the test laid down in the syllabus, I would find those items to be “used during and in the manufacturing or processing.”